UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:18CR739-2 AGF(SPM) |
| | ) |
| LAMAR MCDONALD, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION
AND MEMORANDUM OPINION OF
UNITED STATES MAGISTRATE JUDGE**

All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). This matter is before the Court on Defendant Lamar McDonald's Sealed Motion to Dismiss the Indictment or, in the alternative, Disqualify the Prosecution Team. ECF No. 827. In his motion, McDonald claims that the prosecution of this case was tainted when his treating psychologist at the Bureau of Prisons inappropriately disclosed statements he made during competency restoration, and those statements gave the prosecution team "crucial defense strategy information." *Id.* at p. 3. This taint, McDonald posits, requires dismissal of the indictment or, at a minimum, disqualification of the prosecution team. For the reasons stated below, the undersigned recommends that McDonald's motion be denied.

**BACKGROUND AND PROCEDURAL HISTORY**

Defendant Lamar McDonald is charged in an indictment with one count of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 846, a charge that carries a statutory mandatory minimum term of imprisonment of ten years and a maximum term of imprisonment of life. ECF No. 2. McDonald has pleaded not guilty to that charge. ECF No. 117. On November 13, 2020, following a competency

1

hearing, without objection from McDonald, this Court found McDonald was not competent to proceed to trial and committed him to the Bureau of Prisons for additional treatment and evaluation to determine whether there was a substantial probability he could be restored to competency. ECF No. 514. McDonald was admitted to the U.S. Medical Facility in Springfield on February 4, 2021, ECF No. 772. Following multiple examinations and extensive briefing, on November 15, 2022, the Court ordered that McDonald be involuntarily medicated so he could be restored to competency. ECF No. 735. On November 29, 2022, McDonald appealed that determination to the Eighth Circuit. ECF No. 736.

In March 2023, while McDonald's appeal was pending before the Eighth Circuit, his treating psychologist at the medical facility, Dr. Sarah Burton, notified the Court and the parties that the facility had held an administrative hearing pursuant to *Washington v. Harper*, 494 U.S. 210 (1990), and determined that involuntary medication was warranted because defendant was a danger to himself within a correctional environment. As such, on March 9, 2023, the facility began involuntarily medicating McDonald pursuant to its findings following the *Harper* hearing. On July 19, 2023, Assistant United States Attorney Carrie Costantin filed a motion on behalf of the United States requesting that the Court grant an additional reasonable period of four months for ongoing competency restoration treatment. ECF No. 763. The motion relied, in part, on a Status Update/Extension Request Report dated July 14, 2023, authored by Dr. Burton ("the July 14th Report"). *See* ECF No. 761. Over McDonald's objection, the Court granted the motion authorizing an additional reasonable period, through November 18, 2023, for competency restoration and treatment. ECF No. 768.

In a report dated November 30, 2023, Dr. Burton opined that McDonald had been restored to competency and would continue to remain competent for the duration of his legal proceedings if he continues his medication regimen. ECF No. 772. The warden of the facility subsequently issued a certificate of competency on December 15, 2023. *See* ECF No. 773. The Eighth Circuit affirmed this

2

Court's order directing involuntary medication be administered on December 6, 2023. *See United States v. McDonald*, 2023 WL 8448503 (8th Cir. Dec. 6, 2023); *see also* ECF No. 770, 771. However, because defense counsel was seeking a rehearing before the Eighth Circuit, *en banc*, this Court did not hold a competency hearing at that time.[1]

After the Eighth Circuit issued its mandate affirming this Court's order directing involuntary medication be administered, on May 1, 2024, the Court ordered an updated report and certificate of competency from the Federal Medical Center at Springfield. ECF No. 782. The Court further ordered that the treating doctor relay any concerns regarding the need for continued medication and the impact any interruption of medication may have on McDonald's competency to proceed. *Id.* In accordance with this Court's Order, the Federal Medical Center at Springfield filed an updated certificate of competency and an updated report from Dr. Burton on June 26, 2024. ECF No. 789. Thereafter, the Court set the matter for a competency hearing.

On July 31, 2024, the parties appeared for a competency hearing. McDonald was represented by his court-appointed attorney, Justin Gelfand, and the United States was represented by Assistant United States Attorney Tiffany Becker, who took over from AUSA Costantin as the lead prosecutor.[2] Dr. Burton appeared and testified on behalf of the United States. Following the hearing, the court entered its order finding that McDonald was competent to proceed. *See* ECF No. 807. Immediately following the July 31st competency hearing, the Court held a pretrial motion scheduling conference during which McDonald, through counsel, orally moved to withdraw his previously filed pretrial motions, *see* ECF No. 803, and moved for additional time to file new pretrial motions. *See* ECF No. 804. Both motions were granted. *See* ECF Nos. 805 and 806. On October 17, 2024, in compliance with this Court's pretrial motion scheduling

---

[1] The Petition for rehearing was filed on January 3, 2024. *See United States v. McDonald,* Appellate Case No. 22-3482.
[2] AUSA Costantin retired from the U.S. Attorney's Office at the end of 2023.

orders, McDonald filed a Motion for Disclosure of Experts (ECF No. 819), Motion to Suppress Evidence from Electronic Devices (ECF No. 820), Motion to Suppress Evidence Seized from 6003 Napier Drive (ECF No. 821), Motion to Suppress Postal Evidence and for a *Franks* Hearing (ECF No. 822), Motion to Suppress Evidence Seized from 525 Rifle Ridge Drive (ECF No. 823), Motion to Suppress Statements (ECF No. 824), and Motion for Disclosure of 404(b) Evidence (ECF No. 825). On October 21, 2024, McDonald filed the instant Motion to Dismiss the Indictment or, in the alternative, Disqualify the Prosecution Team (ECF No. 829). The United States filed its responses to the foregoing pretrial motions on November 26, 2024 (ECF Nos. 835, 836, 837, 838, 839), December 10, 2024 (ECF Nos. 843, 844, 846) and December 12, 2025 (ECF No. 848).

On January 17, 2025, the parties appeared for an evidentiary hearing and oral argument on all pending pretrial motions. The United States called witnesses and presented evidence unrelated to the instant motion. In connection with this Motion to Dismiss the Indictment or Disqualify the Prosecution Team, McDonald presented testimony of his treating psychologist, Dr. Sarah Burton. The United States did not present any witnesses but elicited testimony on cross examination from Dr. Burton. At the end of the evidentiary hearing, the parties requested time to have a transcript prepared and file post-hearing briefs. That briefing is now completed.

The undersigned thought it prudent to take up this Motion to Dismiss or Disqualify before addressing McDonald's other pretrial motions because it involves threshold issues such as whether the indictment should be dismissed or the prosecution team disqualified. Based on the testimony of Dr. Burton at the evidentiary hearing, which I found to be entirely credible, and the record before this Court, I make the following factual findings and conclusions of law regarding McDonald's Motion to Dismiss or Disqualify the Prosecution Team.

## FACTUAL FINDINGS

Dr. Sarah Burton (formerly Hampton) is a forensic unit psychologist at the Bureau of Prisons (BOP) Federal Medical Facility in Springfield who performed a competency restoration evaluation on McDonald from 2021 through 2024. Evid. Hrng. Tr., ECF No. 859, at p. 21, 23. As part of the competency restoration evaluation, Dr. Burton queried McDonald about the options available to him regarding his criminal charges. *Id.* at p. 30. She explained that guidelines for forensic psychology, including some seminal texts on assessing competence, note the importance of probing and querying for case-specific information and asking follow-up questions to make sure that defendants have a deeper rational understanding of their case and aren't simply "parrot[ing] back" information that may have been provided about the legal system. *Id.*, at p. 50-51.

Dr. Burton explained that, in assessing McDonald's competence, it was important for her to review with him the different types of pleas a defendant can enter to ensure "that [the] defendant can define those pleas and what they mean as well as what's likely to follow each plea, so that at the bare minimum they understand that sentencing will likely follow a plea of guilty and that a trial will likely follow a plea of not guilty." *Id.* Discussing the different plea options also gives the psychologist assessing competence insight into the defendant's "decisional competence. . . essentially how are they going about making their important decisions and what is the basis of those decisions. Are those decisions rooted in psychosis, or are they rooted in a measured weighing of the pros and cons of each potential plea." *Id.* at p. 48-49. This information is "exceptionally relevant to [the] determination as to whether the defendant is competent to proceed and assist in his own defense." *Id.* at 49.

Dr. Burton also explained that there are several reasons why it is neither feasible nor desirable for counsel to be present during these discussions. *See id.* at p. 53. For example, she noted the frequency

of the discussions impact the feasibility of having counsel present. *Id.* She also cited the need to avoid the impact a third-party observer may have on the defendant's participation in a competency evaluation and the need to inquire about the defendant's relationship with the defense attorney as additional reasons why having defense counsel present is not practical or desirable in most evaluations. *Id.*

As such, outside the presence of his attorney, Dr. Burton asked McDonald about options available to him regarding his criminal charges and other case-specific topics with the aim of assessing whether McDonald rationally understood the circumstances and potential outcomes of his case. *Id.* at p. 30. During one such interaction on June 2, 2023, McDonald commented on a plea agreement that had been offered to serve a term of 60 months. *Id.* at p. 32. Dr. Burton did not know whether this was true.[3] *Id.* at p. 33. During that same conversation, Dr. Burton and McDonald discussed the evaluation process and timeline and McDonald expressed motivation to be adjudged competent and leave the BOP Springfield facility and get on with this life. *Id.* at p. 35. To Dr. Burton, McDonald's expressed desire to get out of Springfield was not linked to McDonald's statement that he had been offered a plea agreement to serve a term of 60 months. *Id.* at 49.

Dr. Burton met with McDonald again on July 7, 2023, for another forensic interview. *Id.* at p. 36. When asked about potential sources of evidence in his case, on this occasion McDonald told Dr. Burton it was none of her business. *Id.* at p. 37. Hearing this, Dr. Burton clarified her role and purpose in asking questions. *Id.* at p. 38. Specifically, that she was asking McDonald these questions to assess whether he can identify at least plausible sounding sources of evidence in his case or a criminal case in general. Tr. 38-39, 52-53. In response to Dr. Burton's questions on this occasion McDonald simply stated, "there is none." *Id.* at p. 38.

---

[3] In its Response opposing McDonald's motion, the Government denied that ever offered or would offer such a resolution to the case. *See* ECF No. 848, at p. 4. McDonald has not disputed this contention.

On July 16, 2023, Dr. Burton emailed the Court, defense counsel, and the lead prosecutor at the time the July 14th Report summarizing her findings. *Id.* at p. 40. *See also* ECF No. 761. Dr. Burton testified that she understood her professional obligation to avoid disclosing case-specific information in her report "unless absolutely necessary to answer the Court's questions specific to competence." ECF No. 859, at p. 51. Thus, in reporting to the Court and counsel for both sides, Dr. Burton endeavored to provide summative statements that discuss the quality of McDonald's discussions regarding decision making, legal theory, and ability to understand critical concepts. *See id.* at p. 51-52. To the extent Dr. Burton provided specifics about her discussions with McDonald, she did so because she thought it was necessary to reflect the quality of his decision making such as, for example, his previous rigidity in decision making. *Id.* at p. 52.

Dr. Burton did not relay anything to the prosecution team beyond what was in her July 14th Report. *Id.* at p. 52. At no time did Dr. Burton ever talk to counsel for the Government about McDonald's intention to plead guilty pursuant to a plea agreement or about potential witnesses, or about McDonald's relationship with his attorney or his trial strategy. *Id.* at p. 49-50. At the hearing, Dr. Burton denied that anything in her July 14th Report was intended to reflect McDonald's plan to enter a guilty plea pursuant to a specific plea agreement or otherwise reveal defense strategy. *Id.* at p. 32, 49. In response to questions by defense counsel about information contained in her July 14th Report related to a potential plea agreement, Dr. Burton testified as follows:

> Q. And so this discussion about his intention to proceed with a plea for 60 months was in response to a discussion initiated by you; correct?
>
> A. I think we are mischaracterizing here the nature of that sentence. "He spoke about his intended plea" is conveying that we had a conversation about what plea he intended to enter. He commented on a plea agreement being previously offered for that amount of time. I had no way, that I'm aware of, of knowing whether that was even true, but I was not

7

> intending to convey in that sentence that he told me he
> intended to plead guilty as part of a plea agreement and that
> was the plea agreement that he intended to enter into or hoped
> to enter into.
>
> Q. But just to be as laser-focused as I can, your
> understanding of what he communicated to you was a willingness
> to enter a plea of guilty?
>
>   A.  No.

Evid. Hrng. Tr., ECF No. 859, at p. 32.

Counsel for the Government also asked Dr. Burton about the section in the July 14th Report that referenced a potential plea agreement. Once again, she denied that the Report revealed in any way what plea McDonald said he was going to enter:

> Q. And with respect to a particular portion of that report
> about which you were asked, I believe it was on page 12, if I
> could direct your attention there regarding your June 2, 2023,
> interview of the defendant, is there at any point in that
> summary any indicator of what plea the defendant told you that
> he was going to enter?
>
> A.  No.
>
> Q. And were you in -- at any time did you disclose to the
> government or anyone else what plea the defendant told you he
> intended to enter?
>
> A.  No.

*Id.* at p. 48.

### CONCLUSIONS OF LAW

Based on the foregoing factual findings, it is not at all clear to this Court that Dr. Burton's July 14th Report, on which McDonald's motion is predicated, revealed any attorney-client privileged or other information that invades the relationship between McDonald and his defense attorney. Nevertheless, McDonald claims he is entitled to either dismissal of the indictment or an order disqualifying the prosecution team because the statements in Dr. Burton's July 14th Report about a potential plea

8

agreement and McDonald's motivation to move forward with his life gave the prosecution team a tactical advantage—namely, knowledge of a possible defense strategy. ECF No. 827, at p. 3. Although the precise legal basis of McDonald's motion is not entirely clear, he appears to be asserting a Sixth Amendment violation arising from the Government's alleged intrusion into the attorney-client relationship. *See* ECF No. 827, at p. 5 (asserting that Dr. Burton's disclosure of information regarding McDonald's views about a potential plea agreement in this case will "have a profound impact on McDonald's ability to engage in plea negotiations" and the fact that "the Prosecution Team currently has that information necessarily and inherently interferes with McDonald's right to effective assistance of counsel during the plea negotiation process moving forward.").

The Sixth Amendment of the U.S. Constitution guarantees a criminal defendant the right "to have the [a]ssistance of [c]ounsel for his defense." U.S. Const. Amend. VI. The Supreme Court has held that the constitutional right to counsel means the right to the ***effective*** assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-686 (1984); *see McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) ("[T]he right to counsel is the right to the effective assistance of counsel."). The Supreme Court has held that a defendant's right to communicate confidentially with an attorney is part and parcel of the right to effective assistance of counsel. *See Weatherford v. Bursey*, 429 U.S. 545, 554 n.4 (1977). The Court has also held that the government's intrusion into the attorney-client relationship "inhibit[s] [the] free exchanges between defendant and counsel" and therefore constrains an attorney's ability to effectively represent a defendant. *Id. See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009) ("By assuring confidentiality, the [attorney-client] privilege encourages clients to make 'full and frank' disclosures to their attorneys, who are then better able to provide candid advice and effective representation.").

9

However, intrusion into the attorney-client relationship does not, standing alone, constitute a Sixth Amendment violation. Rather, to find a Sixth Amendment violation based on intrusion into the attorney-client relationship, the Supreme Court has required "communication of defense strategy to the prosecution" and purposeful, not inadvertent, intrusion into the defense camp. *See Weatherford,* 429 U.S. 557-558 (finding no purposeful intrusion where government informant was present during the defendant's meeting with this attorney because he went, "not to spy" but because the defendant asked him to attend). The Supreme Court has also required a showing that the intrusion resulted in actual prejudice to the defense. *United States v. Morrison*, 449 U.S. 361, 365 (1981) (holding that a successful Sixth Amendment claim must identify a "constitutional infringement" which "has produced some ... prejudice to the defense").

Consistent with Supreme Court precedent, the Eighth Circuit has held that "to establish a Sixth Amendment violation, the defendant must show two things: first, that the government knowingly intruded into the attorney-client relationship; and second, that the intrusion demonstrably prejudiced the defendant, or created a substantial threat of prejudice." *United States v. Hari,* 67 F.4th 903, 912 (8th Cir. 2023); *see also United States v. Singer*, 785 F.2d 228, 234 (8th Cir. 1986). The "appropriate course when faced with a sixth amendment violation is to tailor a remedy to the injury suffered to assure the defendant effective assistance of counsel" rather than summarily dismissing the indictment. *Singer,* 785 F.2d at 237 (holding that, notwithstanding demonstrated acts of governmental misconduct and prejudice to the defendant, dismissal of the indictment was inappropriate where the district court's remedial order allowing the defendant to move for a continuance or a change of venue provided a remedy that would adequately "avoid prejudice" and "remove the taint of the violation"). The defendant bears the burden of proving a Sixth Amendment violation. *United States v. Kriens,* 270 F.3d 597, 603 (8th Cir. 2001); *United States v. Solomon,* 679 F.2d 1246, 1250 (8th Cir. 1982).

Applying these principles to the facts of this case, for the reasons stated below, the undersigned finds no Sixth Amendment violation that would warrant either dismissal of the indictment or the disqualification of the prosecution team.

### A. The Government did not knowingly intrude on McDonald's relationship with defense counsel

Under Eighth Circuit precedent, the first step of the Sixth Amendment analysis requires that McDonald prove an act of "deliberate intrusion" into the attorney-client relationship. *Hari,* 67 F.4th at 912 (quoting *United States v. Tyerman,* 701 F.3d 552, 559 (8th Cir. 2012) (rejecting defendant's Sixth Amendment claim where defendant admitted the government "only passively received" attorney-client privileged information and holding that unlike the Fourth, Seventh and Ninth Circuits, the Eighth Circuit has not "left open whether deliberate intrusion is required"). The evidence before this Court does not amount to proof of "deliberate intrusion" by the government into the attorney-client relationship. At the outset, the Court notes it is not at all clear that the information shared by Dr. Burton intrudes into the attorney-client relationship or defense strategy. Admittedly, the inference the defense has drawn—namely, that statements in the July 14th Report revealed McDonald's views about a potential plea agreement—is not unreasonable given the vague and somewhat disjointed wording in the Report. However, Dr. Burton's testimony during the evidentiary hearing credibly clarified the Report by explaining that she intentionally did not reveal any specific plea McDonald said he was going to enter; she didn't even know if the referenced plea offer of 60 months was true (it was not); and, in her mind, McDonald's expressed desire to get out of Springfield was not linked to McDonald's statement that he had been offered a plea agreement to serve a term of 60 months. *Id.* at 32, 49.  In sum, Dr. Burton's credible hearing testimony severely undercuts McDonald's claim that her July 14th Report revealed "privileged" and "important information regarding possible defense strategy." ECF No. 827, at p. 1.

11

Even if the information in Dr. Burton's July 14th Report reflected privileged and important defense strategy information, as McDonald contends, the evidence presented establishes that the Government obtained that information passively. The record before the Court shows that Dr. Burton, who is not a member of the prosecution team, was charged by the Court with assessing McDonald's ability to understand the nature and consequences of the proceedings against him and assist properly in his defense. Although it is entirely plausible that, while assessing McDonald's competency, Dr. Burton acquired sensitive information that may well have reflected defense strategy or other sensitive case-specific information, Dr. Burton credibly testified that, consistent with standards that govern her profession, she did not disclose such case-specific information to either the prosecution team or the court. Instead, in preparing her July 14th Report, she was careful to avoid case-specific information and disclosed what she believed to be only summative information necessary to explain her conclusions. The opening lines of McDonald's Brief is telling: "To be clear, the question before this Court is ***not*** whether any U.S. Department of Justice employee (including any prosecutor on this case) acted in bad faith or ***intended*** to violate McDonald's rights." ECF No. 827, at p. 1 (emphasis added). McDonald is wrong about the legal question before this Court. Without evidence of intentional, knowing, and "deliberate intrusion" by the Government, McDonald's motion to dismiss the indictment based on a claimed Sixth Amendment violation fails. *See Hari,* 67 F.4th at 912.

### B. McDonald failed to prove "demonstrable prejudice" or "substantial threat" thereof

The record before this Court is also devoid of any evidence (or clearly articulated argument) that the Government has used or can use any of the information revealed in Dr. Burton's July 14th Report to prejudice McDonald at trial. Nor has McDonald articulated any argument or produced any evidence suggesting that the information revealed in Dr. Burton's Report impacts defense counsel's ability to provide adequate representation to McDonald in this case. As the Eighth Circuit has held, "absent

12

demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate. And where, as in this case, defendant has demonstrated no prejudice of any kind, either transitory or permanent, to the ability of [his] counsel to provide adequate representation in the criminal proceedings, any Sixth Amendment violation provides no justification for interfering with criminal proceedings." *Hari*, 67 F.4th at 913 (quoting *Morrison,* 449 U.S. at 365-66) (internal citations omitted).

### C. *Neither dismissal of the indictment nor disqualification of the defense team is warranted*

Even if McDonald had established that the Government's conduct violated his Sixth Amendment right, the remedy for that violation would not be dismissal of the indictment. Remedies to Sixth Amendment violations should be tailored to the injury suffered. *Solomon*, 679 F.2d at 1251. Absent "some adverse effect on the effectiveness of counsel's representation" or "prejudice to the defense," "there is no basis for imposing a remedy." *Morrison*, 449 U.S. at 365. Suppression of evidence, rather than dismissal of the indictment, is often most appropriate when the Sixth Amendment has been violated, *id.* at 365; *see also, Solomon*, 679 F.2d at 1251; *United States v. Kriens*, 270 F.3d 597, 603 (8th Cir., 2001), and dismissal of an indictment is a rare and "drastic remedy." *Singer*, 785 F.2d at 237.

Here, for the reasons stated above, it does not appear that there was any Sixth Amendment violation and if there were such a violation it would be *de minimis* at best. None of the information disclosed involved any substantive communications between McDonald and his attorneys or any actual plea offers that McDonald and his attorneys may have been considering at the time. *See*, *Morrison*, 449 U.S. at 365 ("[C]ertain violations of the right to counsel may be disregarded as harmless error."). Such a *de minimis* intrusion does not warrant the "drastic" step of dismissing the indictment. *Singer*, 785 F.2d at 237. Beyond dismissal of the indictment, without more evidence or information about what impact, if any, information in the July 14th Report has had, or will have, on defense counsel's ability to effectively represent McDonald, this Court finds "no basis for imposing a remedy" at all. *see Morrison*, 449 U.S. at

13

365. In sum, disqualification of the prosecution team is also inappropriate because McDonald has failed to demonstrate that there has been actual prejudice or a substantial threat of prejudice of any kind to his counsel's ability to provide him with adequate representation either during plea negotiations or elsewhere during these criminal proceedings.

Accordingly,

**IT IS HEREBY RECOMMENDED**, that Defendant's Motion to Dismiss the Indictment or, in the alternative, Disqualify the Prosecution Team (ECF No. 827) be **DENIED.**

The parties are advised that they have fourteen (14) days in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. *Thompson v. Nix,* 897 F.2d 356, 357 (8th Cir. 1990).

Trial in this case will be set before the Honorable Audrey G. Fleissig, by separate order.

　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　SHIRLEY PADMORE MENSAH
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

Dated: June 2, 2025