UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:18CR00739 AGF (SPM) |
| ) | |
| LAMAR MCDONALD, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter is before the Court on one of Defendant's pretrial motions. All pretrial motions were referred to United States Magistrate Judge Shirley Padmore Mensah under 28 U.S.C. § 636(b). Defendant Lamar McDonald filed several motions, one of which is currently before the Court, a Sealed Motion to Dismiss the Indictment or, in the alternative, Disqualify the Prosecution Team. (ECF No. 827). Defendant McDonald is one of ten defendants charged by Indictment with a multi-count narcotics conspiracy. Defendant, together with the other defendants, is charged in Count I with conspiracy to distribute and possess with intent to distribute methamphetamine, beginning on or about August 2017 and continuing to June 2018, in violation of 21 U.S.C. § 841(a)(1). The charge carries a statutory mandatory minimum term of imprisonment of ten years and a maximum term of imprisonment of life.

<u>The Competency Proceedings</u>

On November 13, 2020, following a competency hearing, Defendant, without objection, was found not competent to proceed to trial and committed to the Bureau of Prisons for treatment, evaluation, and if appropriate, restoration to competency. The

lengthy and complex chronology regarding the competency proceedings is detailed in the Report and Recommendation and Memorandum Opinion of United States Magistrate Judge, dated June 2, 2025 (the "R&R on the Motion to Dismiss"), and will not be repeated here. In summary, Defendant was ultimately ordered to be involuntarily medicated so he could be restored to competency, and that order was ultimately affirmed by the Eighth Circuit Court of Appeals. While the appeal was pending, however, the medical personnel at the Federal Medical Center at Springfield (the "FMC") held an administrative hearing pursuant to *Washington v. Harper*, 494 U.S. 210 (1990), and determined that involuntary medication was warranted because Defendant was a danger to himself within a correctional environment. On March 9, 2023, the facility began involuntarily medicating Defendant. Over Defendant's objection, an additional period of time was granted for competency restoration. In a report dated November 30, 2023, Dr. Sarah Burton opined that Defendant had been restored to competency and would remain competent for the duration of the legal proceeding if he continued his medication regimen (ECF No. 772), and a certificate of competency was issued on December 15, 2023. (ECF No. 773).

The competency hearing was delayed while Defendant continued to seek relief before the Eighth Circuit Court of Appeals. After the Eighth Circuit issued its mandate directing involuntary medication on May 1, 2024, the Magistrate Judge ordered an updated report and certificate of competency from the medical facility as well as a report from treating doctors regarding any concerns regarding the need for continued medication and the impact of any such medication. In accordance with that Order, the

2

FMC filed an updated certificate of competency and updated report from Dr. Burton on June 26, 2024. (ECF No. 789). The Magistrate Judge held a competency hearing on July 31, 2024, at which Dr. Burton appeared and testified on behalf of the United States. Following the hearing, Judge Mensah issued an order finding that Defendant was competent to proceed. (ECF No. 807). After a scheduling conference, Defendant was permitted to withdraw his previously filed pretrial motions and was granted additional time to file pretrial motions.

Defendant's Motion to Dismiss and Disqualify

After he was found competent to proceed, Defendant filed numerous pretrial motions to suppress and for disclosure on October 17, 2024, and thereafter, on October 21, 2024, filed the instant Motion to Dismiss or Disqualify. The United States responded to the motions, and Judge Mensah held an evidentiary hearing on the motions, including the instant Motion to Dismiss, on January 17, 2025. In connection with this motion, Defendant presented the testimony of Dr. Sarah Burton, his treating psychologist. The parties requested preparation of a transcript and thereafter filed post-hearing briefs. After briefing was complete, Judge Mensah first took up the instant threshold Motion to Dismiss or Disqualify and recommended the motion be denied.

Dr. Burton (formerly Hampton) is a forensic unit psychologist at the FMC in Springfield. She performed a competency restoration evaluation on Defendant from 2021 through 2024. At the evidentiary hearing she testified that as part of that on-going evaluation, and to properly assess his decisional competence, Dr. Burton questioned Defendant about his understanding of the legal proceedings and the options available to

3

him regarding his criminal charges, outside the presence of counsel. At issue in the instant motion are two of the discussions Dr. Burton had with Defendant on June 2, 2023 and July 7, 2023, during the course of her continuing forensic evaluation, referenced in a July 14, 2023 report to the Court. Both discussions took place after the FMC began the involuntary administration of medication.

Dr. Burton reported that during a discussion on June 2, 2023, Defendant stated that he was doing well and was ready to be restored. She stated that he also spoke about his intended plea and reported a plea agreement was previously offered for a term of 60 months. Dr. Burton did not know whether the information regarding the plea offer was true. In its response to the Motion, the Government denied it had ever offered or would offer such a resolution to the case, and Defendant has not disputed this contention. During the same conversation, they discussed the evaluation process and Defendant expressed a motivation to be adjudged competent and leave the BOP facility and get on with his life.

During the July 7, 2023 forensic interview, Dr. Burton queried Defendant about potential outcomes and sources of evidence in his case. She reported that Defendant's thought processes were rigid. When asked about possible outcomes, she reported that Defendant initially responded that it was none of her business. After clarifying why she was asking the questions and explaining that she was asking the questions to assess whether he could identify at least plausible sounding sources of evidence in his case or a criminal case in general, she reported Defendant insisted there "is none."

4

Defendant's statements were summarized in a Status Update/Extension Request dated July 14, 2023, which was filed with the Court and provided to the parties. (the "July 14 Report", ECF No. 761, filed under seal). This fourteen-page report briefly summarized Defendant's history at the facility, and then detailed, under the heading "Recent Hospital Course," a summary of observations and pertinent interactions with Defendant from the time when Defendant's case was transferred to Dr. Burton in late 2021[1] through July 7, 2023. It ended with a section titled "Current Opinion, Prognosis, and Recommendations" in which Dr. Burton (then named Dr. Hampton) opined that Defendant had not yet been restored to competency, but that he had exhibited increased motivation and willingness to cooperate with medication, such that there was a substantial likelihood that he could be restored to competency within the foreseeable future with the continued administration of antipsychotic medication. She requested an additional four months for ongoing restoration treatment. *Id.* at 14. She did not relay anything to the prosecution team other than the July 14 Report or provide any information beyond what appears in the Report.

In his motion, Defendant asserts that these statements gave the prosecution team "crucial defense strategy information," and that the disclosure of this information to the prosecution improperly tainted the prosecution of the case. As set forth in the R&R on the Motion to Dismiss, Defendant asserts that the statements about a potential plea and Defendant's motivation to move forward with his life gave prosecution a tactical

---

[1] The transfer occurred after submission of the November 2021 Forensic Update Report and the retirement of Dr. Preston Baecht, who had previously treated Defendant.

5

advantage, namely, knowledge of a possible defense strategy. ECF No. 827, at 3. He appears to assert a Sixth Amendment violation arising from the Government's alleged intrusion into the attorney-client relationship, which he asserts will "have a profound impact on McDonald's ability to engage in plea negotiations" and which "inherently interferes with McDonald's right to effective assistance of counsel during the plea negotiation process moving forward." *Id.* at 5. The Government denies that there was any intrusion into the attorney-client relationship, asserts that any such intrusion was inadvertent and not "knowing," and that in any event, there is neither any prejudice nor a substantial threat of prejudice.

Judge Mensah held an evidentiary hearing on January 17, 2025. In connection with this motion, Defendant presented the testimony of Dr. Burton and the government cross-examined Dr. Burton. Judge Mensah found Dr. Burton's testimony to be "entirely credible." Based on that testimony, and the record before the Court, Judge Mensah found that in reporting to the Court and counsel for both sides, "Dr. Burton endeavored to provide summative statements that discuss the quality of McDonald's discussion regarding decision making, legal theory, and ability to understand critical concepts." R&R on Motion to Dismiss, ECF No. 871 at 7. "To the extent Dr. Burton provided specifics about her discussion with McDonald, she did so because she thought it was necessary to reflect the quality of his decision making such as, for example, his previous rigidity in decision making." *Id.*

At the hearing, Dr. Burton denied that anything in her July 14 report was intended to reflect any plan to enter a plea or to reveal defense strategy. In particular, she testified

6

that while McDonald had commented on a plea agreement he claimed had previously been offered for 60 months, she had not intended in her report to convey that he told her he intended to plead guilty or to convey that was a plea agreement that he intended to enter into or hoped to enter into. She specifically denied any understanding on her part that McDonald had a willingness to enter into a plea, and further disclaimed on cross-examination ever disclosing to anyone any plea that Defendant told her he intended to enter. ECF No. 859 at 32, 48. She testified that she had not intended to link Defendant's desire to be found competent and leave the medical facility with his statement regarding 60-month plea he claimed he had been offered.

Based on the evidence, Judge Mensah found it was "not at all clear" that Dr. Burton's July 14 Report revealed any attorney-client privileged or other information that invaded the attorney-client relationship. In any event, Judge Mensah found no Sixth Amendment violation that would warrant either dismissal of the indictment or disqualification of the prosecution team. If there was any intrusion, she found it was not a "deliberate intrusion" by the government. Further, Defendant's motion failed because Defendant failed to show any "demonstrable prejudice" or substantial threat of prejudice, as Defendant had not shown any evidence that the Government had used or could use to prejudice Defendant at trial. Even if Defendant had established a violation of the Sixth Amendment, it would be *de minimus* at best, such that a dismissal of the indictment would not be warranted. And disqualification of the prosecution team was also inappropriate in light of the failure to demonstrate any substantial threat of prejudice of

7

any kind to counsel's ability to provide Defendant with adequate representation during plea negotiations or in the further conduct of the case.

Defendant objected to the R&R on the Motion to Dismiss. In his objections, Defendant asserts that the Magistrate Judge "downplayed" the significance of the information that was provided to the prosecutors. He asserts that the entry in the report regarding the June 2, 2023 conversation communicated Defendant's willingness to consider an offer of 60 months, which provided the prosecution with "valuable, and impermissible, insight into possible defense strategy, including most poignantly, his view on his guilt or innocence." (ECF No. 874, at 4). He argues that while the Eighth Circuit law requires a "knowing" intrusion into the attorney-client relationship for a finding of a Sixth Amendment violation, "it is not impossible to find one here." He further asserts that "a substantial threat of prejudice" was created because the prosecution was advised of whether Defendant was willing to plead guilty and the length of sentence he would be willing to accept, especially in light of the fact that the case has already been pending for over seven years. [2] The Government responded to the Objections.

## Discussion

When a party objects to a Report and Recommendation concerning a motion to suppress in a criminal case, the Court is required to "make a de novo determination of

---

[2] Defendant makes no objection or argument with respect to the July 7, 2023, interview. On this record I find that Defendant did not offer any privileged or confidential information during the July 7, 2023 interview. As reported in the July 14 Report, the statements by Defendant reflect nothing more than his unwillingness to cooperate in any conversation at the time. Further, Defendant has not demonstrated any prejudice or potential threat of prejudice based on the reported statements.

8

those portions of the report or specified proposed findings or recommendations to which objection is made." *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)).

I conducted a *de novo* review of the motion to dismiss, including a review of the Court filings, the transcript of the evidentiary hearing, and the July 14, 2023, Report. Based on that review, I find that the Magistrate Judge made proper factual findings that are fully supported by the record and correctly cited the applicable law under the Sixth Amendment. Judge Mensah properly applied that law in concluding that Defendant has not shown the existence of any Sixth Amendment violation. Even if a violation had been shown, I agree that any violation was at best *de minimus* and would not warrant the relief requested. As such, I adopt and incorporate the findings and conclusions in Judge Mensah's Report and Recommendation.

In isolation, one can read the June 2, 2023, entry as indicating a desire to be restored to competency and enter into a plea. In the context of the Report as a whole, however, that becomes far less clear. The July 14 Report was issued following the involuntary administration of medication, but at a time when the report concludes that Defendant is still not competent. It is replete with entries reciting Defendant's desire to be "restored" and get out of there. But there is little clear connection between his expressed desire for restoration and any credible or concrete event. Defendant claimed there was "a motion from the court to go home" and later claimed he had been found not guilty by reason of insanity because of his placement as USMCFP. ECF No. 761 at 9. On April 18, 2023, he suggests that as soon as he is restored his case is over, while on

9

April 2, 4, 10 and 28, 2023, he speaks of being restored so he can get back in court. *Id.* at 10-11. His June 2023 letters indicated he is "ready to go back to court." Although on June 2, 2023 he expresses that he is ready to be restored and speaks of a plea agreement offered to him for 60 months, Dr. Burton made clear that she had no idea if such an offer had been made and had not intended to link the two events. But it is undisputed that no such plea offer was ever made or would be made, and the Government knew no such offer had been made. Read in context of the Report overall, there is little reason to assume the June 2 statement reflects any privileged or even reality-driven desire, and on this record, I find there would be no reason for the Government to read the June 2, 2023, entry as reflecting any privileged expression by Defendant.

Even if the statement could reasonably be construed to reflect a privileged desire to be restored in order to enter into a plea, any such notion was dispelled by Dr. Burton's testimony. She testified she had no idea whether any such offer had been made, and clearly and unequivocally testified that in her mind there was no connection between the desire to be restored to competency and the purported prior plea offer. Further, she testified that she did not have any understanding that Defendant was communicating a willingness to enter into a plea. Evid Hrg. Tr., ECF No. 59, at 32.

Even if one assumed the communication of privileged information, Defendant's motion also fails for the reasons stated in the R&R, as Defendant has not provided any proof of a "deliberate intrusion" by the Government. The July 14 Report provides a detailed report of pertinent events beginning after the November 2021 Forensic Update Report through July 7, 2023. It was offered to explain Dr. Burton's opinions that

10

Defendant had not yet been restored to competency, that he continued to suffer from a chronic and severe mental illness, but that he had demonstrated increased willingness to cooperate with the involuntary administration of antipsychotic medication with no side effects that might impair his ability to assist counsel in preparing a defense, and that there was a substantial likelihood he would be restored to competency.  She took care to avoid case-specific information.  She offered the Report in connection with her request for an additional four months for ongoing competency restoration treatment and disclosed what she believed to be a summary of information necessary to explain her conclusions. There is no evidence whatsoever to suggest that the prosecutors' receipt and review of this report in the context of a request for a four-month extension for competency restoration constitutes a deliberate intrusion into the attorney-client relationship by the prosecutors.  Moreover, a "deliberate intrusion" would require some kind of notice by the Government that it was in possession of privileged information, and for the reasons stated above I find there was no reason for the Government to believe or have any notice that they had received privileged information.

    I also agree with Judge Mensah's conclusion that Defendant's motion should be denied because Defendant has failed to show any evidence of demonstrable prejudice or a substantial threat of prejudice.  Defendant contends that a substantial threat of prejudice exists when the prosecution team becomes aware that a defendant is willing to plead guilty and the length of sentence he would be willing to accept.  But there is no basis for concluding that such an event occurred here.  That is especially true where, as here, the prosecutors were being advised that Defendant had not been restored to competency and

11

knew that the supposed plea offer Defendant referenced had never been made. Further, as stated in the R&R, Defendant has not articulated any argument or produced any evidence whatsoever suggesting that the information revealed in the Report impacts defense counsel's ability to represent Defendant.

Finally, for the reasons stated by the Magistrate Judge, I also find that even if one assumed a violation, in this context any violation of the Sixth Amendment was at best *de minimus* and does not warrant either dismissal or a disqualification of the prosecution team.

Thus, after careful and independent consideration, the Court will overrule Defendant's Objections, and will adopt and sustain the thorough reasoning of Magistrate Judge Mensah set forth in support of her recommended ruling.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation and Memorandum Opinion of United States Magistrate Judge [ECF No. 871] is **SUSTAINED, ADOPTED, AND INCORPORATED** herein.

**IT IS FURTHER ORDERED** that Defendant's Sealed Motion to Dismiss the Indictment or, in the alternative, Disqualify the Prosecution Team [ECF. No. 827] is **DENIED**.

                                               */s/ Audrey G. Fleissig*
                                               AUDREY G. FLEISSIG
                                               UNITED STATES DISTRICT JUDGE

Dated this 21st day of August, 2025.