UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:18CR739-2 AGF(SPM) ) |
| LAMAR MCDONALD, | ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION AND MEMORANDUM OPINION OF UNITED STATES MAGISTRATE JUDGE

All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Defendant Lamar McDonald is charged with conspiring to distribute and possess with intent to distribute methamphetamine from on or about August 2017 through June 2018, in violation of Title 21, United States Code, Section 846. After protracted litigation related to McDonald's competency, McDonald filed a series of pretrial motions including a motion to suppress evidence seized pursuant to a search warrant executed on a priority mail package addressed to 525 Rifle Ridge Drive on November 3, 2017 (the "Postal Warrant"). ECF No. 822. The United States has filed a response opposing McDonald's motion. *See* ECF No. 844.

McDonald argues the affidavit in support of the Postal Warrant lacked probable cause. He also contends the affidavit contains deliberate falsehoods, reflects reckless disregard for the truth, or material omissions and urges the Court to hold a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978). On January 17, 2025, the parties appeared for an evidentiary hearing and oral argument on all pending pretrial motions. At the hearing, Special Agent Steven Sander with the United States Postal Service, Office of Inspector General testified about evidence seized pursuant to the Postal Warrant. The Court

also admitted the relevant search warrant application and search warrant (Govt. Ex. 1); the Police Work Dog Certification for the police canine referenced in the warrant application (Govt. Ex. 2); SLMPD Canine Narcotics Training Record (Govt. Ex. 3); and a Drug Chemistry Examinations Report (Govt. Ex. 4). At the end of the evidentiary hearing, the parties requested time to have a transcript prepared and file post-hearing briefs. Post-hearing briefing is now complete, and McDonald's suppression motion is now ready for a ruling.

After carefully considering the evidence presented at the hearing, the parties' written submissions, and applicable case law, the Court finds McDonald's arguments in support of suppression are without merit. McDonald has also failed to make the substantial preliminary showing necessary to entitle him to a *Franks* hearing. As such, based on the following findings of fact and conclusions of law, and for the reasons stated below, the Court recommends that McDonald's motion to suppress the Postal Warrant and for a *Franks* hearing be denied.

## I. FACTUAL FINDINGS

### A. *The Postal Warrant Application and Affidavit*

On November 3, 2017, United States Magistrate Judge Noelle C. Collins signed a warrant authorizing the search of a Priority Mail package addressed to Rolando Brown, 525 Rifle Ridge Dr, O'Fallon MO, 63366 with a return address of Sophia Brown 2039 L. Ave. Apt #C National City, CA 91950 (the "Postal Warrant"). The authorization to search was based on an affidavit submitted by United States Postal Inspector Steven Sander. *See* Govt. Exh. 1. *See also* Hrng. Tr. (ECF No. 859), at p. 92. In summary, Inspector Sander's affidavit attests postal inspectors detained the Priority Mail package because it exhibited multiple characteristics indicative of packages in which narcotics or proceeds/payments had been found. The affidavit also attests that K-9 Sid, a canine certified in narcotics detection, alerted to the presence of a narcotic odor in the package.

More specifically, in the affidavit, Inspector Sander attested that he had been employed by the U.S. Postal Inspection Service (USPIS) since February 2014, had received training in the investigation of controlled substances or proceeds/payments being transported through the United States, and was currently assigned to the Multi-Functional Team. Govt. Ex. 1, at ¶1. Inspector Sander also attested that members of the Multi-Functional Team had intercepted numerous parcels which were found to contain narcotics or proceeds of narcotics trafficking. *Id.*

The affidavit attests that Express Mail and Priority Mail are frequently used by drug traffickers to ship controlled substances or proceeds/payments because of their speed, reliability, free telephone and internet tracking service, and perceived minimal chance of detection. *Id.* at ¶2. Based on USPIS analysis of prior packages mailed through overnight delivery services that contained narcotics or proceeds/payments, the shipping labels on such packages were usually from an individual to an individual even though Express Mail and Priority Mail was originally intended for urgent business to business correspondence. *Id.*, at ¶¶2-3. In the affidavit Inspector Sander attested that based on intelligence from previously intercepted packages, USPIS established a series of characteristics which, when found in combination of two or more, showed a high probability that a package would contain a controlled substance or the proceeds of controlled substance sales. *Id.* at ¶5.

The profile of packages likely containing contraband included the following characteristics: package mailed from or addressed to a narcotics source city; package had fictitious return address; package addressee name was unknown at the destination address; package sender name was unknown at the return address; package address information was handwritten; package was mailed from a Commercial Mail Receiving Agency (CMRA); package was addressed to residential areas; package was addressed individual to individual; packages were wrapped in brown paper and/or heavily taped; the zip

code from where the package was mailed was different than the zip code used in the return address. *Id.* at ¶¶2-5.

According to the affidavit, on November 3, 2017, inspectors conducting a routine review of inbound Priority Mail packages at the Hazelwood Postal distribution center observed a Priority Mail package addressed to Rolando Brown, 525 Rifle Ridge Dr, O'Fallon, MO, 63366 with a return address of Sophia Brown, 2039 L. Ave. Apt #C, National City, CA, 91950 ("the Subject Parcel"). *Id.* at ¶7. The Subject Parcel was mailed on November 1, 2017, from the National City, CA postal facility. The inspectors noted the Subject Parcel was addressed person to person, had a handwritten label, was addressed to a residential area, and originated from a known source narcotics area: National City, CA 91950. *Id.* Due to these characteristics, inspectors detained the Subject Parcel to verify the validity of the addressees and sender listed on the mailing labels. *Id.*

The affidavit attests inspectors determined the sender address was not a valid address. *Id.,* at ¶8. The delivery address (525 Rifle Ridge) was a valid address, but the addressee name "Rolando Brown" was not associated with that address. *Id.* Due to the characteristics of the package, a K-9 review was requested. St. Louis Metropolitan Police Department K-9 Officer Kathy Wiedemann and K-9 Sid responded, and K-9 Sid reacted in a positive manner to the package, indicating the presence of a narcotic odor. *Id.* at ¶9. The affidavit refers to an Intra-Department Report and Correspondence Sheet dated September 9, 2016, from Officer Wiedemann (the "Report"), as evidence of K-9 Sid's qualifications. *Id.* at ¶14.

The Report, which is attached to the affidavit, states that K-9 Sid is a German Shepard/Belgian Malinois who graduated from the St. Louis Metropolitan Police Department Canine School on February 19, 2016, along with Officer Wiedemann. *Id.* The Report also states that K-9 Sid and Officer Wiedemann trained 2-3 times per month, and K-9 Sid was trained in the following narcotic substances:

Marijuana, Cocaine, Crack Cocaine, Methamphetamine, Heroin, LSD, Mushrooms & Black Tar and Ecstasy. *Id.* According to the Report, K-9 Sid was certified with the Missouri Police Canine Association and the North American Police Working Dog Association (NAPWDA) in narcotics and patrol, Officer Wiedemann and K-9 Sid were members of the United States Police Canine Association. *Id.* Finally, the Report states that during the week of April 25, 2016, Officer Wiedemann and K-9 Sid certified with NAPWDA for Narcotics/Patrol. *Id.*

### B.  Execution of the Postal Warrant

Inspector Sander appeared before Judge Collins on November 3, 2017, and she placed him under oath in connection with the Postal Warrant application. *Id.* at p. 94. After reviewing the materials submitted by Inspector Sander, Judge Collins issued the search warrant on the same day. *Id.* Thereafter, Inspector Sander executed the warrant on the same day and filed a copy of the return with the Court. *Id.* at p. 94-95 & 98.

The items found within the package were listed on the return and included approximately 450 grams of suspected narcotic MDMA. *Id.,* at p. 98. When field tests yielded negative results, the officers sent the substance to a forensic laboratory to be chemically analyzed. *Id.*, at p. 99. A report of that analysis showed that the substance contained a mixture of several substances including the opioid, fentanyl, Noscapine, caffeine, and Papaverine. *Id.*, at p. 99-100. *See also* Govt. Exh. 4.

### C.  Incorrect K-9 Certification Information in the Postal Warrant

After execution of the Postal Warrant, Inspector Sander learned that the K-9 qualification sheet that Officer Weidemann had provided did not reflect the most current certification date for K-9 Sid. *Id.* at p. 95. Specifically, Inspector Sander testified that the certifying body reflected in the Report attached to the affidavit regarding Sid's qualifications— the Missouri Police Canine Association and the North American Police Working Dog Association (NAPWDA)—was not the certifying body that issued K-9

Sid's updated training certification. *Id.* at p. 96. Instead, at the time the Postal Warrant was issued, K-9 Sid had been certified by the American Mantrailing, Police and Work Dog Association. *See* Govt. Ex. 2. Inspector Sander explained that although the Department had previously used the Missouri Police Canine Association and NAPWDA to certify its police canines, the Department had switched to American Mantrailing at the time he applied for the Postal Warrant. *Id.; see also* Govt. Ex. 2. After the Postal Warrant was issued and executed, Officer Weidemann provided Inspector Sander with a new, current training certification. *Id. See also* Govt. Ex. 2. The updated certification provided by Officer Weidemann reflects that as of April 24, 2017, about seven months before Judge Collins issued the Postal Warrant, K-9 Sid was certified by American Mantrailing, the Department's current certifying body. *Id.*

Inspector Sander credibly testified that he had no reason to believe there was any inaccuracy in his affidavit either prior to the execution of the Postal Warrant or at the time he executed the Postal Warrant. *Id.* at p. 100. Inspector Sander also testified, credibly, that he had no reason to believe there was not probable cause to support the search of the package or that anything on the face of the affidavit or accompanying documents misrepresented K-9 Sid's certification status at the time the Postal Warrant was issued. *See id.* at pp. 112-115. Indeed, the updated certification presented at the hearing reflects that K-9 Sid was certified at the time the Postal Warrant was issued. Other than the date and issuing agency of K-9 Sid's most recent certification, there was no evidence presented that called into question any of the other information in the Report related to K-9 Sid's training or qualifications.

## II.     CONCLUSIONS OF LAW

Because McDonald's suppression motion challenges the sufficiency of the Postal Warrant, the Court's analysis begins with a review of the warrant and supporting affidavit.

### A. LEGAL STANDARD FOR REVIEW OF SEARCH WARRANTS

"Issuance of a search warrant must be supported by probable cause, which depends on whether, under the totality of the circumstances, there is fair probability evidence of a crime will be found in a

particular place." *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016) (citing *United States v. Rodriguez*, 711 F.3d 928, 936 (8th Cir. 2013)). *See also Johnson v. United States*, 333 U.S. 10 (1948); *United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013); Fed. R. Crim. P. 41.

Probable cause is "a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Probable cause may be found in hearsay statements from reliable persons, *Gates*, 462 U.S. at 245; in hearsay statements from confidential informants corroborated by independent investigation, *Draper v. United States*, 358 U.S. 307, 313 (1959); or in observations made by trained law enforcement officers, *McDonald v. United States*, 335 U.S. 451, 454 (1948). While these are some of the common ways in which probable cause is established, they are not all-inclusive.

Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. *Gates*, 462 U.S. at 230. It is well-established that, when the issuing judge relies on the supporting affidavit to issue a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citations and quotations omitted); *see also United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014); *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995).

After a judicial officer has issued a warrant upon a finding of probable cause, that finding normally deserves great deference. *Gates,* 462 U.S. at 236. Thus, "[t]he affidavit should be examined under a commonsense approach that is not in a hypertechnical fashion." *Solomon,* 432 F.3d at 827 (citation and quotations omitted). *See also United States v. Ventresca,* 380 U.S. 102, 109 (1965); *Gladney,* 48 F.3d at 312 (explaining that "[a]ffidavits must be read in a common-sense and realistic fashion") (citations and quotations omitted). In applying this principle when reviewing the issuance of a

warrant, this Court "afford[s] great deference to the issuing judge's probable-cause determination, ensuring only that the judge had a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing." *United States v. Petruk,* 929 F.3d 952, 959 (8th Cir.) (citations and quotations omitted; emphasis supplied), *cert denied,* 140 S. Ct. 510 (2019); *see also United States v. Daigle,* 947 F.3d 1076, 1081 (8th Cir. 2020) (citations and quotations omitted).

### B. THE POSTAL WARRANT WAS SUPPORTED BY PROBABLE CAUSE

Based upon the facts contained within the four corners of the affidavit, the Court finds that the Postal Warrant was supported by probable cause. Specifically, Inspector Sander's affidavit established that, based on the totality of the circumstances, agents had reason to believe the subject parcel would contain a controlled substance or the proceeds of controlled substance sales. The warrant affidavit reflected that, through experience and analysis, postal inspectors like Inspector Sander had identified a series of characteristics which, when found in combination of two or more, showed a high probability that a package would contain a controlled substance or the proceeds of controlled substance sales. The warrant affidavit also reflected that the parcel that was ultimately searched had two or more of the identified characteristics, giving rise to a high probability that the parcel would contain a controlled substance or the proceeds of a controlled substance. Finally, the warrant affidavit reflects that Inspector Sander relied on the findings of a narcotics detection K-9, Sid, who reacted in a positive manner to the package, indicating the presence of a narcotic odor. K-9 Sid's qualifications were attached to the warrant affidavit and reflected that Sid had graduated from the St. Louis Metropolitan Police Department Canine School on February 19, 2016; trained 2-3 times a week; was a trained narcotic/patrol canine certified with the Missouri Police Canine Association and North American Police Working Dog Association and with NAPWDA the week of 4/25/16.

These circumstances are more than sufficient to support Judge Collins's probable cause finding. "[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert. If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Florida v. Harris*, 568 U.S. 237, 246–47 (2013). In *Harris*, the Court further held, "[t]he same is true, even in the absence of formal certification, if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs." *Id*.

McDonald asserts K-9 Sid's alert on the package was a false positive because the package contained Noscapine, which is not a controlled substance. However, this assertion is undercut by Inspector Sander's hearing testimony, supported by the written laboratory report, that in addition to Noscapine, the substance in the package contained the opioid fentanyl and Papaverine, an alkaloid derived from opium.[1] This assertion also falls under the weight of the reasoning found in cases like *Harris*, in which the Supreme Court held:

> . . . [I]f a dog alerts to a car in which the officers finds no narcotics, the dog may not have made a mistake at all. The dog may have detected substances that were too well hidden or present in quantities too small for the officer to locate. Or the dog may have smelled the residual odor of drugs previously in the vehicle or on the driver's person.

*Harris*, 568 U.S. at 245–246.

McDonald's suppression motion fails even if, as he asserts, K-9 Sid's alert was a false positive alert. In determining if probable cause exists, the reviewing court examines the information before the Magistrate Judge at the time the search warrant was issued—not what was found later. The Supreme Court has held "…we do not evaluate probable cause in hindsight, based on what a search does nor does

---

[1] *See* Ashrafi, S., et al., *Papaverine: A Miraculous Alkaloid from Opium and its Multimedicinal Application*, Molecules. 2023 Mar. 31; 28; https://pmc.ncbi.nlm.nih.gov/articles/PMC10095881/.

not turn up. *Harris*, 568 U.S. at 249. Here, the affidavit provided ample information—individual to individual Priority Mail package, handwritten address, addressed to residential area, fictitious sender address, addressee name not associated with address, originated from known source narcotics area, and positive trained K-9 alert—for the court to find probable cause to search the package. In sum, even if K-9 Sid's alert turned out to be a false positive, as McDonald suggests, based on the four corners of the Postal Warrant and affidavit, the Postal Warrant was supported by probable cause.

### C.  MCDONALD HAS FAILED TO DEMONSTRATE HE IS ENTITLED TO A *FRANK'S* HEARING

In *Franks*, the Supreme Court held that, under limited circumstances, a defendant may attack the veracity of an affidavit after the warrant has been issued and executed. Specifically, a criminal defendant may request a hearing to challenge a search warrant on the ground that the supporting affidavit contains factual misrepresentations or omissions relevant to the probable cause determination. *See Franks*, 438 U.S. at 155-56. However, to gain such a hearing, a defendant must show both (1) that the affiant made a false statement "knowingly and intentionally" or with "reckless disregard for the truth" (or omitted material information) and (2) if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause. *See id.* at 155-56; *see also United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013) (affirming denial of *Franks* hearing notwithstanding district court's finding of several misrepresentations and omissions in the search warrant; stating, "the affidavit established probable cause even absent [the] misrepresentations and including the omitted information").

The Eighth Circuit has repeatedly recognized that "[t]he requirement of a substantial preliminary showing is not lightly met," *Arnold*, 725 F.3d at 898 (quoting *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998)), and recently reiterated that a *Franks* hearing is not appropriate unless and until the defendant makes the requisite preliminary showing that the warrant affidavit contained an intentional or reckless false statement or omission that was necessary to the finding of probable cause. *United States v.*

*Blair,* 93 F.4th 1080, 1084–85 (8th Cir. 2024) (holding the court did not abuse its discretion by denying a *Franks* hearing because "[e]xcised of the contested statements, the affidavit still established 'a fair probability that contraband or evidence of a crime would be found'").

Defendant has failed to meet this high burden for a *Franks* hearing, first, because he has failed to demonstrate that Inspector Sander knowingly and intentionally, or with reckless disregard for the truth, made a false statement or omitted material information from the affidavit. With respect to K-9 Sid, the affidavit states:

> 9. On November 3, 2017, Saint Louis Metropolitan Police Department K-9 Officer Kathy Wiedemann was contacted and responded to the USPIS St. Louis Field Office in St. Louis, MO. I accompanied Officer Wiedemann and her narcotic trained K-9 "Sid" to a place at the St. Louis Field Office not known to have been previously contaminated by a narcotic odor. I observed Officer Wiedemann's K-9 "Sid" search this area. Upon arriving at the **Subject Parcel**, Officer Wiedemann advised that K-9 "Sid" reacted in a positive manner, indicating the presence of a narcotic odor.
>
> 14. The **Subject Parcel** is currently in the custody of Postal Inspector Steven O. Sander in the Eastern District of Missouri. Attached herewith are photocopies of the mailing label for the **Subject Parcel** and the qualifications for Officer Wiedemann's K-9 "Sid".

*See* Govt. Ex. 1.

Other than to point out that the name of the certifying agency and the date of the most recent certification in the qualifications Report was inaccurate, Defendant has made no attempt to demonstrate that any of the assertions relating to K-9 Sid's positive alert and K-9 Sid's qualifications were false when the warrant was issued. In determining whether a defendant has made the requisite preliminary showing required by *Franks* to warrant a hearing, "[a]llegations of negligence or innocent mistake will not suffice to demonstrate reckless or deliberate falsehood." *United States v. McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011) (citing *Franks*, 438 U.S. at 171). Rather, the test is whether, after viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had

obvious reasons to doubt the accuracy of the information he reported." *United States v. Conant*, 799 F.3d 1195, 1200 (8th Cir. 2015) (quoting *McIntyre*, 646 F.3d at 1114). Based on the factual findings, Defendant has failed to meet this test. As noted in the Court's factual findings, the updated certification presented at the hearing reflects that K-9 Sid was certified at the time the Postal Warrant was issued. Other than the date and issuing agency of K-9 Sid's most recent certification, Defendant presented no evidence that called into question any of the other information in the Report related to K-9 Sid's training or qualifications.

Even if the mistaken reference to K-9 Sid's outdated certification could somehow be construed as a false statement or omission, Defendant fails to satisfy the second pre-requisite for a *Franks* hearing—namely, that excised of the contested statement, the affidavit fails to establish a fair probability that contraband or evidence of a crime would have found. *See Blair,* 93 F.4th at 1084–85 (holding the court did not abuse its discretion by denying a *Franks* hearing because "[e]xcised of the contested statements, the affidavit still established 'a fair probability that contraband or evidence of a crime would be found'").

Here, the contested information presented to the Magistrate Judge regarding expired certifications is contained in the Report attached to the affidavit and it states:

> K-9 Sid and I train at least 2-3times a month and he is certified with  Missouri Police Canine Association and North American Police Working Dog Association in narcotics and patrol. Also, we are members of the United States Police Canine Association. The week of 4/25/16 we certified with NAPWDA for Narcotics/Patrol.

If the contested/inaccurate information were ***removed***, the Report would state:

> K-9 Sid and I train at least 2-3 times a month and he is certified ~~with Missouri Police Canine Association and North American Police Working Dog Association~~ in narcotics and patrol. Also, we are members of the United States Police Canine Association. The week of 4/25/16 we certified with NAPWDA for Narcotics/Patrol.

If the Report were *corrected* to reflect the actual state of Sid's certification at the time the warrant was issued, the Report would state:

> K-9 Sid and I train at least 2-3 times a month and he is certified with ***American Mantrailing, Police & Work Dog Association*** in narcotics and patrol. Also, we are members of the United States Police Canine Association. The week of ***April 24, 2017,*** we certified with ***American Mantrailing, Police & Work Dog Association*** for Narcotics/Patrol.

Irrespective of whether the contested/inaccurate information is "excised" or corrected, the affidavit still established "a fair probability that contraband or evidence of a crime would be found." *Blair,* 93 F.4th at 1084–85. Based on the factual findings, Inspector Sander obtained and reasonably relied on the qualifications sheet provided by K-9 Sid's handler, Officer Wiedemann. The qualifications sheet attached to the affidavit accurately reflected that K-9 Sid graduated from canine school in February of 2016, had ongoing training, and had been certified with the Missouri Police Canine Association and with NAPWDA for Narcotics and Patrol the week of April 2, 2016. There was no evidence or argument presented to suggest these statements were untrue. The evidence presented at the hearing demonstrated that K-9 Sid's certification by a different certifying agency—American Mantrailing, Police and Work Dog Association was even more current/up-to-date than the qualifications sheet attached to the affidavit suggested. McDonald's motion fails because he has simply failed to show, as required by *Franks,* either that the affidavit contained material omissions/deliberately false statements or that the removal and/or inclusion of contested facts would impact probable cause. *Franks*, 438 U.S. at 155-56.

### D.  THE GOOD FAITH EXCEPTION APPLIES

Based on this Court's factual findings, evidence seized pursuant to the Postal Warrant would be admissible under the *Leon* good-faith exception even if this Court somehow concluded that the affidavit did not establish probable cause. *United States v. Leon,* 468 U.S. 897, 922 (1984). The good-faith

inquiry asks, "whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Escudero*, 100 F.4th 964, 968 (8th Cir. 2024) (quoting *United Stats v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006)). As the Eighth Circuit recognized in *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015), there are four instances where the *Leon* good faith exception does not apply: (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid. *Id.*

For the reasons set out in the previous section, McDonald has not satisfied either the first or fourth *Leon* exceptions because he has failed to demonstrate that the affidavit supporting the Postal Warrant contained a deliberately false statement or material omission and has failed to demonstrate that the warrant was so facially deficient that no officer could reasonably presume the warrant to be valid. McDonald has not argued, and cannot demonstrate based on the record, that any of the remaining *Leon* exceptions apply here. In other words, there is simply no evidence of record to support a finding that either Inspector Sander had any reason to believe his search of the postal package was illegal despite the issuing judge's authorization. In sum, the postal evidence is admissible because, based on the facts and evidence of record, it was objectively reasonable for Inspector Sander to have relied on Judge Collins's determination that there was probable cause to issue the Postal Warrant.

Accordingly, for the reasons stated in this memorandum opinion,

**IT IS HEREBY RECOMMENDED**, that Defendant's Motion to Suppress Postal Evidence (ECF No. 822) be **DENIED**.

The parties are advised that they have fourteen (14) days in which to file written objections to this recommendation and determination.  Failure to timely file objections may result in waiver of the right to appeal questions of fact.  *Thompson v. Nix,* 897 F.2d 356, 357 (8th Cir. 1990).

Trial in this case will be set before the Honorable Audrey G. Fleissig, by separate order.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated: November 3, 2025